UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
CHUNSONG PIAO,

                            Plaintiff,

          - against -

COMMISSIONER OF SOCIAL
SECURITY,

                       Defendant.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

20-cv-5480 (BMC)

**COGAN**, District Judge.

      Plaintiff seeks review of the decision of the Commissioner of Social Security, following a hearing before an Administrative Law Judge ("ALJ"), that he is not "disabled" as defined in the Social Security Act for the purpose of receiving disability insurance benefits. The ALJ found that plaintiff has severe impairments of PTSD; degenerative disc disease of the lumbar spine; internal derangement of the left shoulder; migraine headaches; and alcohol abuse. Despite these severe impairments, the ALJ also found that plaintiff has sufficient residual capacity to perform "light work," 20 C.F.R. § 404.1567(b), with certain limitations. Those limitations include, as relevant to this review proceeding, a restriction to performing only simple tasks, and having only occasional contact with the general public.

      Plaintiff's first point of error is that because the ALJ found the medical opinions of a consultative psychologist, Dr. Toula Georgiou, and a state agency consultant, Dr. S. Shapiro, to be "persuasive," the ALJ was obligated to explain why he did not adopt all of the limitations those consultants found applicable to plaintiff's mental impairments.

Plaintiff focuses on Dr. Shapiro's findings that he had marked limitations on his ability to understand and remember detailed instructions, and moderate limitations on his ability to: carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule; maintain regular attendance; be punctual with customary tolerances; sustain an ordinary routine without special supervision; work with or near others without distraction; complete a normal workday or workweek without interruption from his mental impairments; perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; respond appropriately to changes in a routine work setting; travel in unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.

But plaintiff has left out a number of Dr. Shapiro's conclusions. He also found that plaintiff was not significantly limited in: remembering locations and work-like procedures; remembering or understanding very short or simple instructions; carrying out short and simple instructions; asking simple questions or requesting assistance; getting along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness; and being aware of normal hazards and taking appropriate precautions.

The limitations that the ALJ placed on plaintiff's ability to work – performing only simple tasks and having only occasional contact with the general public – are a fair distillation of Dr. Shapiro's conclusions. In contrast, plaintiff would restrict an ALJ's exercise of judgment – at least if he is going to find a state examiner's opinion to be "persuasive" – to require either accepting every limitation that the examiner found – and, logically, the lack of significant

limitations as well – or explaining for each limitation why the ALJ was not adopting it. But the mental function portion of the Residual Functional Capacity section of the state agency's Disability Determination Explanation form presents nearly 30 questions, some of which require narrative responses. Its thoroughness is precisely the reason that the ALJ can distill its essence as to the limitations on a plaintiff's Residual Functional Capacity ("RFC"). Plaintiff concedes that an ALJ "is not obligated to reconcile explicitly every conflicting shred of medical testimony," in his assessment of limitations to find that a medical opinion carries significant weight (other than the general requirement that an ALJ needs to discuss the sustainability and consistency of any medical opinion, see 20 C.F.R. § 404.1527(c)), and it seems clear that such a requirement would be unworkably cumbersome as well as unnecessary.

The same is true regarding the ALJ's treatment of Dr. Georgiou's opinion. Plaintiff references Dr. Georgiou's observations that plaintiff may have difficulties regulating emotions, maintaining a regular work schedule, working a consistent pace, and having to interact with others. But Dr. Georgiou also observed that plaintiff was calm, albeit with tense affect and anxious mood; that he had adequate expressive and receptive language; that he was well-oriented; that his attention and concentration were only mildly impaired; that his memory skills were intact; and that he had average cognitive functioning and fair insight and judgment. Putting aside that fact Dr. Georgiou qualified his observations about possible limitations with the words "may have," the ALJ did not have to include or discuss every observation to find Dr. Georgiou's opinion persuasive. Rather, the ALJ could make a judgment as to its essence, and reasonably conclude, like his assessment of Dr. Shapiro's opinion, that limiting plaintiff to simple tasks and only occasional public interaction fairly addressed the concerns raised in Dr. Georgiou's opinion.

Plaintiff's second point of error is similar. It is that in assessing plaintiff's RFC, the ALJ did not adequately consider his own findings with regard to the paragraph B criteria of Listing § 12.15 (Trauma- and stressor-related disorders). In finding that plaintiff's impairments did not meet that Listing, the ALJ determined that plaintiff had a "moderate" limitation in his ability to concentrate, persist, and maintain pace. Plaintiff contends that the ALJ's use of the term "moderate" in the Listing analysis required the ALJ to express that finding as a limitation in plaintiff's RFC, or at least explain why he was not doing that.

The Second Circuit considered a similar argument in McIntyre v. Colvin, 758 F.3d 146 (2d Cir. 2014). There, an ALJ found at step 3 of the sequential evaluation process that the plaintiff had "moderate" difficulties in social functioning and in maintaining concentration, persistence, and pace, but that these impairments did not rise to a level sufficient to satisfy paragraph B of Listing 12.04 (Depressive, bipolar, and related disorders). In assessing RFC before step 4, however, the ALJ did not identify these moderate difficulties as part of the plaintiff's RFC. The plaintiff therefore contended that at step 5, the hypothetical put to the vocational expert was insufficient because it did not include these moderate difficulties. The Second Circuit disagreed:

> We hold . . . that an ALJ's failure to incorporate non-exertional limitations in a hypothetical (that is otherwise supported by evidence in the record) is harmless error if (1) "medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace," and the challenged hypothetical is limited "to include only unskilled work"; or (2) the hypothetical "otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]"

Id. at 152 (citations and quotations omitted).

Although McIntyre involved a step 5 issue and plaintiff here is raising a step 4 issue, that is not a significant distinction. Claimants frequently characterize an alleged inadequacy in the

4

determination of RFC as a step 5 inquiry because the Commissioner has the burden of proof at that step, unlike all the prior steps.  See Young v. Comm'r of Soc. Sec., No. 21-CV-1264, 2021 WL 5356838, at *1 (E.D.N.Y. Nov. 17, 2021).  The Commissioner must put an accurate question to the vocational expert that describes the claimant's RFC.  However, the issue is the same whether framed in terms of step 4 or step 5 – did the ALJ properly determine RFC?

Plaintiff cannot seriously contend that this record does not contain substantial medical evidence demonstrating that the claimant is restricted to performing simple tasks and having only occasional contact with the public.  The evidence described above demonstrates that easily, and there is more in the record on which the ALJ relied.  This is especially significant here because the ALJ, at the conclusion of his discussion about whether plaintiff met the Listings, but before proceeding to his assessment of RFC, expressly qualified the effect that his findings on the paragraph B criteria of Listing § 12.15 would have with regard to the subsequent determination of plaintiff's RFC:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental functional analysis.

It thus seems plain that a remand here would serve no purpose.  The ALJ would simply reach the same conclusion using a few more words.

Accordingly, plaintiff's motion for judgment on the pleadings is denied, and the

5

Commissioner's motion for judgment on the pleadings is granted. The Clerk is directed to enter judgment dismissing this case.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       November 23, 2021